IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHERYL KAY BARKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 14-cv-025-TLW ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Cheryl Kay Barker seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income under the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 11). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 47-year old female, applied for benefits under Titles II and XVI on November 2, 2010. (R. 138-41, 142-48). Plaintiff alleged a disability onset date of January 20, 2010. (R. 138, 142). Plaintiff claimed that she was unable to work due to emphysema. (R. 176). Plaintiff's claims for benefits were denied initially on March 22, 2011 and on reconsideration on August 1, 2011. (R. 76-77, 82-89; 78-79, 92-97). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 98-99). The ALJ held the hearing on August 2, 2012. (R. 47-75). The ALJ issued a decision on August 16, 2012, denying benefits and finding plaintiff not disabled. (R. 24-40). The Appeals Council denied review, and plaintiff appealed. (R. 1-7; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured under Title II through September 30, 2014. (R. 29). Plaintiff had not engaged in any substantial gainful activity since January 20, 2010, her alleged disability onset date. Id. The ALJ found that plaintiff had severe impairments of "degenerative disk disease of the lumbar spine with herniated nucleus pulposus at L5-S1, status post[] surgery; asthma /[and] chronic obstructive pulmonary disease." Id.

The ALJ discussed and found that multiple other physical impairments were nonsevere. (R. 30). The ALJ first analyzed the rupture of plaintiff's right foot caused by helping her brother move. (R. 29). Within three months, plaintiff's symptoms were resolved and she no longer had "significant pain." (R. 29-30). The ALJ then discussed plaintiff's diagnoses of gastroesophageal

2

reflux disease, esophagitis, hiatal hernia, and chronic active gastritis. (R. 30). Plaintiff's gastroenterologist, Eric Cottrill, M.D., "started [her] on antireflux measures and oral PPI therapy with omeprazole," which did a "fairly good job" of controlling plaintiff's symptoms. Id. Plaintiff also takes medication for hypertension. Id. The ALJ found, taking into consideration the State agency medical consultant evaluation, that there is no evidence of "end organ damage" and that plaintiff's hypertension is not "significant enough to significantly impede her activities of daily living or basic work functioning." Id.

To assess the severity of plaintiff's mental impairments of affective disorder and anxiety disorder, the ALJ considered the "paragraph B" criteria. (R. 30-31). The ALJ found that plaintiff had mild limitations in activities of daily living and social functioning, and no limitation in concentration, persistence or pace. Id. Plaintiff did not experience any episodes of decompensation. Id. Because plaintiff's medically determinable mental impairments of affective disorder and anxiety disorder caused no more than mild limitation in the three functional areas with no episodes of decompensation, the ALJ found they were nonsevere. (R. 31). As support for his position, the ALJ quoted the capabilities summary of the report of Derrise L. Garner, Psy.D., an agency consultative examiner, as follows:

1. At the maximum, the claimant appears to be able to understand complex instructions during a normal workday.
2. At the maximum, the claimant appears to be able to remember complex instructions during a normal workday.
3. At the maximum, the claimant can persist on complex tasks during a normal work day.
4. The claimant demonstrated the capacity, at the maximum, to interact in a limited contact situation involving the public during a normal workday.
5. The claimant demonstrated the capacity, at the maximum, to interact in a limited contact situation involving work supervisors and/or co-workers.
6. The claimant appears to be capable of managing her own funds independently.

7. It is reasonable to expect moderate improvement in the claimant's foreseeable future if recommendations for treatment with counseling and psychotropic medications are followed.
8. The claimant appears to be a fully reliable informant.

(Exhibit 6F).

(R. 32).

The ALJ gave "great weight to the opinion of Dr. Garner regarding her medical finding[s] as she had the opportunity to examine the claimant and offered her opinion based upon the examination signs and findings." Id. Dr. Garner also assigned plaintiff a GAF score of 50; however, the ALJ did not give this GAF score controlling weight since it "is not consistent with the opinion of the claimant's capabilities expressed by Dr. Garner"; however, the ALJ found that the "limitations identified in the above 'paragraph B' criteria are consistent with the record as a whole." Id.

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. (R. 32-33). After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs to work in a reasonably clean-air environment, where the temperature is controlled. [Plaintiff] is afflicted with symptomatology from a variety of sources, to include mild to moderate to occasional chronic pain, which would be of sufficient severity to be noticeable to her at all times; but nonetheless, she is able to remain attentive and responsive in a work setting, and carry out work assignments satisfactorily. [Plaintiff] takes medication for relief of her symptomatology, but appropriate use of the medication would not preclude her from remaining reasonably alert to perform required functions presented by her work setting.

(R. 33-34).

At step four, the ALJ found that plaintiff was capable of performing past relevant work as an informal waitress. (R. 37). The ALJ made an alternative step five finding that plaintiff was

capable of performing the requirements of the occupations of cashier II (light, SVP 2), sales attendant (light, SVP 2), cafeteria attendant (light, SVP 2), charge account clerk (sedentary, SVP 2), touch-up screener (sedentary, SVP 2), and hand suture winder (sedentary, SVP 2). (R. 39).

As a result of finding plaintiff could perform past relevant work as well as the alternative occupations presented at step five, the ALJ determined that plaintiff is not disabled. Id.

## ANALYSIS

On appeal, plaintiff raises two errors. First, plaintiff argues that the ALJ failed to properly evaluate the opinion of consultative examiner Derrise L. Garner, Psy.D. (Dkt. 15). Second, plaintiff argues that the ALJ's RFC assessment "was legally insufficient and not supported by substantial evidence." Id.

**Consultative Examiner's Opinion**

At step two, the ALJ determined that plaintiff had two nonsevere mental impairments: affective disorder and anxiety disorder. (R. 30). In reaching that conclusion, the ALJ relied on plaintiff's hearing testimony, Function Reports, and the opinion of consultative examiner, Derrise L. Garner, Psy.D. (R. 31-32). The ALJ specifically assigned "great weight" to Dr. Garner's opinion at step two, noting that Dr. Garner "had the opportunity to examine the claimant and offered her opinion based upon the examination signs and findings." (R. 32). The only portion of Dr. Garner's opinion discounted by the ALJ is the GAF score. Id.

At step four, the ALJ does not discuss plaintiff's mental impairments beyond mentioning that he gave "great weight" to two State agency non-examining psychological consultants' opinions. (R. 37). The ALJ does not mention Dr. Garner's opinion at step four. (R. 33-37).

Plaintiff argues that the ALJ "implicitly disregarded Dr. Garner's opinions regarding [plaintiff's] limited social functioning" because his RFC failed to include any mental limitations.

(Dkt. 15 at 5). Plaintiff further argues that the ALJ failed to explain his reasoning for rejecting portions of Dr. Garner's opinion which caused plaintiff reversible harm. Id. The Commissioner counters that while "[t]he better course would have been for the ALJ to explain his weighing of Dr. Garner's opinion in greater detail, … this procedural impropriety did not alter the evidence before the ALJ and does not undermine confidence in the determination." (Dkt. 16 at 8-9). The Commissioner continues, arguing that the ALJ's failure to properly weigh Dr. Garner's opinion was harmless error because two of the six jobs the ALJ relied on at step five to find that plaintiff was not disabled do not require significant interaction with the general public or supervisors and coworkers, which are the limitations that plaintiff argues were overlooked from Dr. Garner's opinion. (Dkt. 16 at 9-10).

When an ALJ gives great weight to a medical opinion, the Tenth Circuit presumes that the ALJ has accepted that opinion in its entirety. See Martinez v. Astrue, 422 F. App'x 719, 724-25 (10th Cir. 2011) (unpublished).[1] Although an ALJ who gives great weight to an opinion may reject some portions of that opinion, he must explain his reasons for doing so. See id. at 725. Failure to provide that explanation ordinarily constitutes reversible error. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

In Haga, the Tenth Circuit reversed an ALJ's decision that adopted some limitations of a consultative examining physician's residual functional capacity assessment but rejected, without explanation, four other limitations. See id. The Tenth Circuit stated that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id. at 1208 (citations omitted). Because the ALJ failed to

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

6

explain his reasoning for adopting some limitations but not others, the Tenth Circuit remanded the case "so that the ALJ can explain the evidentiary support for his RFC determination." <u>Id.</u>

Because the agency consultative psychologist's opinion is uncontradicted by any other evidence in the record and was given great weight, the ALJ was required to explain his reasons for rejecting any portion of that opinion. However, the Commissioner is correct that this error is harmless because two of the six jobs identified in the ALJ's step five findings do not require plaintiff to have any contact with the public, and only superficial contact with coworkers and supervisors; which are the limitations contained in Dr. Garner's opinion which plaintiff argues the ALJ rejected. <u>See</u> <u>Liveoak v. Astrue</u>, 2013 WL 183710, *14-15 (N.D.Okla. January 17, 2013).

According to Appendix B of the Dictionary of Occupational Titles ("DOT"), the fifth number of the nine-digit code reflects the job's relationship to people. <u>See</u> http://www.occupationalinfo.org/appendxb_1.html (last visited on July 21, 2015). The DOT rates the amount of interaction on a scale of 0-8, although the scale does not necessarily appear to be in ascending order from most interaction to least. For example, 0 is "Mentoring," and 5 is "Persuading," both of which could involve constant interaction with others. 8, however, is defined as "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." <u>Id.</u> This definition is consistent with superficial contact with supervisors and co-workers.

Two of the six jobs identified at step five of the ALJ's decision have an 8 for the fifth digit. The ALJ found that plaintiff could work as a Touch-Up Screener (DOT # 726.684-110), or Hand Suture Winder (DOT # 712.687-034). (R. 39). The vocational expert testified that there

7

were 122,000 jobs available nationally for those two jobs combined. (R. 67). Additionally, neither job description requires any contact with the general public. For these reasons, any error at step four in failing to include limits on superficial contact with co-workers and supervisors and limited contact with the public is remedied at step five. See Liveoak, 2013 WL 183710 at *14-15 (holding that any discrepancy between the ALJ's residual functional capacity determination that plaintiff have no contact with the general public and the vocational expert's testimony was not reversible error based on the DOT's job codes). Further, a "significant number" of jobs is based on a national number, not a regional one; therefore, the two jobs remaining available to plaintiff are available in "significant numbers" to satisfy the regulations. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009); 20 C.F.R. §§ 404.1566, 416.966.

For these reasons, the Court finds that any error in failing to explain the weight given to Dr. Garner's opinion at step four is harmless.

**RFC Analysis**

Plaintiff raises two sub-issues under this allegation of error: that the ALJ improperly evaluated "the impact of [plaintiff's] pain[,] and [plaintiff's] mental impairments.[2]" (Dkt. 15 at 8). The Commissioner counters that the ALJ "adequately accounted for [p]laintiff's alleged pain—to the extent that her allegations were credible." (Dkt. 16 at 8).

Plaintiff first argues that "the evidence as a whole" establishes a level of pain beyond the mild to moderate severity, and occurring more than occasionally as found by the ALJ. (Dkt. 15 at 8). Additionally, plaintiff cites to twenty-three locations within the record as "evidence . . . that pain in one area of her body or another . . . was a fairly regular complaint . . . ." Id. Plaintiff

---

[2] Because the Court already found that the ALJ's failure to include mental limitations from Dr. Garner's consultative examination opinion was harmless error, the Court will only address plaintiff's allegation of error regarding pain in connection with her RFC.

specifically relies on the medical examination of Ms. Littlefield, ARNP, completed in July 2012 as evidence the ALJ did not properly evaluate plaintiff's current level of back pain. (Dkt. 15 at 8-9). Plaintiff also argues that the ALJ did not explain how he reached the conclusions about plaintiff's pain. Id.

The Commissioner states that plaintiff is attempting to "aggregate multiple unrelated conditions" to formulate an argument of unaddressed complaints of pain. (Dkt. 16 at 7). The Commissioner points out examples that the ALJ cited of isolated instances of pain complaints that were resolved with treatment, and examples of the ALJ's treatment of plaintiff's back pain. (Dkt. 16 at 7-8).

Although plaintiff does not challenge the ALJ's credibility findings, the Court finds it necessary to address, at least in part, the credibility portion of the ALJ's decision in order to dispose of this allegation of error. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009). This is particularly true on the issue of pain. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (holding that, when objective medical evidence shows a pain producing impairment, the ALJ was required to consider the assertions of severe pain and to "decide whether he believe[d them]." (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987)).

In evaluating credibility, complaints of disabling pain are analyzed using the three-step analysis found in Luna, 834 F.2d at 163-4. Those steps are "(1) whether [plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [plaintiff's] subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [plaintiff's] pain is in

fact disabling." Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995) (citing Luna, 834 F.2d at 163-64) (other internal citations omitted).

The evidence an ALJ should consider under a Luna pain evaluation includes "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems, … daily activities, and the dosage, effectiveness, and side effects of medication." Luna, 834 F.2d at 165-66. However, "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility," he need not make a 'formalistic factor-by-factor recitation of the evidence.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) (citing Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[C]ommon sense, not technical perfection, is our guide." Id.

Here, in conjunction with his analysis of plaintiff's non-severe impairments, the ALJ discussed several instances in which plaintiff experienced pain from unrelated ailments during 2010, 2011, and 2012. (R. 29, 30, 33, 34). Plaintiff received treatment for each of these ailments, the treatment resolved her pain, and the ALJ noted her pain did not return. Id.

When specifically addressing her RFC, the ALJ discussed plaintiff's hearing testimony that "[w]hen her breathing was bad, … she did not notice her back problem." (R. 34). He then discussed her report of symptoms of radiating pain, and that she was able to perform housework with the pain until 2012, when she had surgery. (R. 34-35). The ALJ also discussed a May 11, 2010 report noting that plaintiff's breathing had worsened because she "had been working outside and going to her husband's construction site." (R. 35).

The ALJ discussed plaintiff's treatment relationship with Mary Littlefield, ARNP, who "primarily monitor[ed]" plaintiff and her medications. Id. The ALJ noted that on May 10, 2012,

plaintiff reported to Ms. Littlefield "that she was doing well after back surgery, eating well, and with pain totally aborted," but she requested the pain medication tramadol from Ms. Littlefield "in case she experienced pain on a long flight she was taking to Belgium." Id. The ALJ noted that Ms. Littlefield's physical examination on that date "showed that the back had excellent range of motion with no pain." (R. 36).

The ALJ noted plaintiff's July 27, 2012 visit to Ms. Littlefield with complaints of back pain, but he also noted that the examination results showed "radiating vertebral tenderness; however, straight leg raising test was negative, and deep tendon reflexes were 2+. There was pain on palpation of the back and with a bending twisting motion; however, there was no motor or sensory deficit." Id. In summary, the ALJ stated that he "considered the objective findings of Ms. Littlefield following [plaintiff's] back surgery (Exhibit 17F) showing negative straight-leg raising test and normal neurological examination, in addition to the relief of leg and back pain immediately after surgery. From [plaintiff's] testimony, she was able to take walks on the beach following surgery and she was able to sit on the plane ride to Belgium. … [Plaintiff] takes twelve different medications, including Singular and ProAir for her breathing, diclofenac for her back, and the medications cyclobenzaprine and tramadol for pain, as detailed in Exhibit 12E; however, she did not allege side effects from her medications at the hearing." (R. 36).

The ALJ sufficiently discussed the Luna factors related to plaintiff's pain, tied those factors to evidence in the record, and concluded that although plaintiff's pain would be noticeable, it would not prevent her from successfully performing work related duties. Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

11

## CONCLUSION

For the foregoing reasons, the ALJ's decision denying plaintiff's claims for benefits is affirmed.

SO ORDERED this 4th day of September, 2015.

_____
T. Lane Wilson
United States Magistrate Judge